## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

WESLEY COTTON,          )
                              )
       Plaintiff,          )
                              )
v.                       )    Case No.:  4:17-cv-01067-SGC
                              )
SOCIAL SECURITY      )
ADMINISTRATION, Commissioner,  )
                              )
       Defendant.      )

## MEMORANDUM OPINION[1]

Plaintiff Wesley Cotton appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability and disability insurance benefits.  (Doc. 1).  Plaintiff timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. § 405(g).  For the reasons stated below, the Commissioner's decision is due to be reversed and remanded.

## I.    FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Plaintiff was thirty-six years old at the time he filed his application; he was thirty-eight at the time of the Administrative Law Judge's ("ALJ's") decision.  (*See* R. 14, 25).  Plaintiff has a ninth grade education and speaks English.  (R. 18, 25). His past work experience includes employment as an auto mechanic, brick layer,

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 9).

heavy equipment operator, and caulker. (R. 24). Plaintiff claims he became disabled on October 3, 2013, due to back problems, COPD, and fibromyalgia. (R. 14, 209).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the evaluation stops. *Id*. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet certain durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found Plaintiff had not engaged in SGA since the alleged onset date. (R. 16). At step two, the ALJ found Plaintiff suffered from the following severe impairments: (1) status post modified microdiscectomy secondary to herniated disc, lumbar spine at L5-S1; (2) status post anterior interbody fusion secondary to disc disease, spinal stenosis, radiculopathy, and instability, lumbar spine at L5-S1; and (3) degenerative changes of the lumbar spine. (*Id.*).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments meeting or medically equaling any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17). Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following limitations: (1) he can sit for one hour without interruption and for a total of at least six hours in an eight-hour workday; (2) he can stand and/or walk for at least one hour without interruption and for a total of at least six hours in an eight-hour workday; (3) he cannot climb ropes, poles, or scaffolds; (3) he can occasionally climb ramps, stairs, and ladders; (4) he can frequently balance, stoop, kneel, and crouch; (5) he can occasionally crawl; (6) he can frequently use his upper extremities for reaching overhead and frequently use his lower extremities for the operation of foot controls; (7) he can frequently work in humidity, wetness, and extreme heat and can occasionally work in extreme cold; (8) he cannot work in poorly ventilated areas or at unprotected heights; and (9) he can frequently operate hazardous machinery, drive, and be exposed to vibration. (R. 17).

Because the ALJ determined Plaintiff was unable to perform past relevant work at step four, the ALJ relied on the testimony of a vocational expert ("VE") in finding a significant number of jobs in the national economy Plaintiff can perform. (R. 24-25). Thus, the ALJ determined Plaintiff was not disabled. (R. 26).

## II.    STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is

supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. DISCUSSION

Plaintiff asserts the ALJ's decision is not supported by substantial evidence and should be reversed and remanded.  (Doc. 12).  Specifically, Plaintiff contends the ALJ: (1) failed to properly evaluate the credibility of Plaintiff's testimony of pain; and (2) improperly discounted the opinion of Plaintiff's treating physician.  (*Id.* at 4-13).  The Plaintiff's arguments are limited to the ALJ's findings regarding his back problems.  (*Id.*).

Here, Plaintiff's back problems began after a car accident on August 5, 2013, while he was at work.  (R. 18, 19).  An August 9, 2013 MRI of Plaintiff's lumbar spine showed: (1) a small lateralizing soft disc centrally and on the right at L5-S1 with mild to moderate mass effect on the right S1 nerve root; (2) a small eccentric annual tear on the right at L5-S1; and (3) mild degenerative changes at L1-L2.  (R.

308).  During an August 14, 2013 visit to the Alabama Comp Clinic, Plaintiff reported aching, stabbing pain in his lower back with numbness and tingling in his legs.  (R. 309).  The Alabama Comp Clinic recommended a lumbar epidural steroid injection, which was performed on September 3, 2013.  (*Id.*; R. 326).

On September 19, 2013, Plaintiff saw Dr. Martin Jones of Neurological Surgery Associates complaining of back and right leg pain; he also reported having two epidural injections, which did not help and made the pain worse.  (R. 459).  Dr. Jones noted conservative treatment had been ineffective and that Plaintiff chose  to undergo a microdiscectomy.  (R. 460).  Dr. Jones performed the microdiscectomy on October 4, 2013.  (R. 465).  During an October 21, 2013 follow-up, Dr. Jones noted Plaintiff was "doing well."  (R. 468).  On a November 18, 2013 follow-up, Dr. Jones noted Plaintiff was making progress and recommended physical therapy.  (R. 471-72).  On December 19, 2013, Dr. Jones noted the plaintiff was still having pain and reported no improvement.  (R. 473).  Dr. Jones ordered an MRI, which was performed on December 24, 2013. (R. 474, 476).  The MRI revealed post-surgical changes on the right at L5-S1 with considerable scar tissue around the S1 nerve root but no recurrent herniation or lesion.  (R. 476).  On a January 6, 2014 follow-up visit, Dr. Jones noted the MRI "looks fine" and stated there was no further surgical remedy and recommended a Functional Capacity Evaluation ("FCE").  (R. 477-79).  The FCE was performed

on January 14, 2014, and concluded Plaintiff could perform work at the light to medium level. (R. 481-91).[2] On January 27, 2014, Dr. Jones noted Plaintiff could return to work which accommodated the FCE analysis and opined he would be at maximum medical improvement with a ten percent impairment rating. (R. 492-94). On February 4, 2014, Plaintiff was released from physical therapy with a good prognosis. (R.433).

Five months later, on July 4, 2014, Plaintiff visited the office of his primary treating physician, Dr. Michael Dupré, complaining of lower back pain radiating down his right leg and foot; Plaintiff reported the pain prevented him from walking or sitting for extended periods. (R. 635-37). Examination revealed tenderness and muscle spasms in Plaintiff's lower back and paraspinal region. (R. 636). An MRI on July 30, 2014, revealed multilevel mild degenerative and post-operative changes. (R. 750).

On August 5, 2014, Plaintiff saw Dr. Gregory Gullung at Alabama Orthopedic Spine and Sports Medicine Associates, reporting moderate, five-out-of-ten pain in his lower back and right leg. (R. 514). Plaintiff stated his first surgery had been effective for approximately six months but the pain had returned. (*Id.*).

---

[2] The ALJ noted that, on the same day, Plaintiff saw his primary physician, Dr. Michael Dupré, who noted Plaintiff's musculoskeletal exam was unremarkable with no abnormalities. (R. 350-51). The ALJ also noted this was Plaintiff's first post-surgery visit to his primary physician. (R. 20). However, review of the record reveals the reason for the visit was uncontrolled high blood pressure that arose during his FCE. (R. 350). Dr. Dupré's treatment notes from that visit also reveal Plaintiff reported back pain. (*Id.*).

Examination revealed tenderness and limited range of motion in the lumbar spine, a positive straight leg raise, full strength on the left, and four-out-of-five strength in his right leg. (R. 515). Imaging showed degenerative disc disease and stenosis at L5-S1 with vertical instability and foraminal stenosis at L5-S1. (*Id.*). Dr. Gullung prescribed a back brace and recommended physical therapy. (*Id.*). Plaintiff returned on October 7, 2014, reporting pain as four on a ten-point scale. (R. 516). Findings on physical exam were materially unchanged. (R. 517). On October 15, 2014, Plaintiff underwent a transforaminal injection at L2-L3, L3-L4, and L4-L5, as well as a transforaminal epidural steroid injection at L4-L5 and L5-S1. (R. 532-33).

On January 21, 2015, Plaintiff returned to Dr. Gullung complaining of continued pain which interfered with his sleep, daily activities, and ability to work. (R. 601). Physical examination revealed: (1) tenderness around the midline and paraspinal area; (2) limitation of lumbar flexion, extension, and rotation; (3) decreased sensation on the left lateral thigh, lower leg, and top of his foot; (4) positive straight leg raise; and (5) a forward pitched gait. (R. 602). Imaging of Plaintiff's lumbar spine showed L5-S1 degenerative disc disease with stenosis and vertical instability. (*Id.*). Dr. Gullung recommended a second back surgery. (R. 603).

On February 9, 2015, Dr. Gullung performed an anterior interbody fusion at L5-S1 and posterior decompression at L4-5. (R. 607-09). Plaintiff reported improving leg pain and moderate back pain and was discharged on February 12, 2015, with medication to manage pain. (R. 610). During a February 20, 2015 follow-up, Plaintiff reported no leg pain but moderate back pain. (R. 526). Physical examination and x-rays showed normal postoperative findings. (*Id.*). During a March 24, 2015 visit, Plaintiff again reported no leg pain but moderate back pain. (R. 606). Physical examination and x-rays revealed all hardware was in place and had not loosened, and Dr. Gullung recommended physical therapy. (*Id.*). Plaintiff returned to Dr. Gullung on June 2, 2015, reporting back pain. (R. 905). Physical examination revealed: (1) back tenderness with limited range of motion; (2) full strength; (3) negative straight leg raise; and (4) normal station and gait. (R. 906). X-rays revealed no loosening or motion in the hardware. (*Id.*). On a September 28, 2015 visit, Plaintiff reported mild to moderate lower back pain, rating his pain as three on a ten-point scale. (R. 907). Physical examination revealed mild lumbar tenderness to the midline and paraspinal area, mildly limited range of motion, no deformity or injury, no gross instability, normal strength, and normal tone. (R. 908).

Meanwhile, on April 22, 2015, Dr. Dupré—Plaintiff's treating physician—completed a Physical Capacity Evaluation ("PCE"). Dr. Dupree opined Plaintiff

could: (1) sit, stand, and/or walk for one hour during an eight-hour workday; (2) occasionally lift and carry up to ten pounds but never lift or carry anything over ten pounds; (3) occasionally push or pull with his arms, hands, legs, and feet; (4) occasionally squat and reach; (5) never crawl, bend, or climb; (6) frequently grasp, manipulate, finger, and handle objects bilaterally; and (7) never be exposed to unprotected heights or moving machinery.  (R. 653-64).  Dr. Dupré also opined Plaintiff would be: (1) mildly restricted in performing activities involving exposure to dust, fumes, and gases; (2) moderately restricted in driving and performing activities involving exposure to marked changes in temperature and humidity; and (3) totally restricted from performing activities involving exposure to unprotected heights or moving machinery.  (R. 564).

Dr. Dupré completed a Pain Questionnaire in which he opined Plaintiff would have chronic, moderately severe pain, meaning he could tolerate the pain but would experience marked limitations in performing activities which caused the pain.  (R. 565).  Dr. Dupré opined Plaintiff would need constant rest periods to walk or lie down to relieve his pain.  (*Id.*).  Dr. Dupré noted Plaintiff's medications caused sedation, mental sluggishness, slower reflexes, and dizziness.  (*Id.*).  Dr. Dupré also checked a box indicating Plaintiff would miss three or more workdays per month due to his medical condition and limitations.  (*Id.*).  When Plaintiff returned to Dr. Dupré for a checkup on May 5, 2015—two weeks after Dr. Dupré

completed the PCE and Pain Questionnaire—Plaintiff denied musculoskeletal and neurological symptoms. (R. 629). Physical examination revealed Plaintiff's back, arms, feet, and lower legs were normal. (R. 629-31).

On October 15, 2015, Dr. Hisham Hakim performed a consultative examination of Plaintiff. (R. 788-95). Plaintiff reported that surgery had given him some pain relief but his legs give out and he falls; he also reported neck and shoulder pain and occasional numbness in his right hand. (R. 793). Physical exam revealed slight tightness in the trapezius muscle and shoulder girdle on both sides but normal range of motion in Plaintiff's neck. Plaintiff also exhibited: (1) normal muscle tone; (2) adequate strength; (3) decreased sensation to pinprick in the dorsal aspect of the right foot; (4) a slightly antalgic gait; (5) trouble hopping on his right leg; (6) fairly normal hopping on his left leg; (7) no difficulty hopping on both legs together; (8) the ability to bend forward 40 degrees and squat about 70% down; (9) "mild" trouble with toe and heel walking on the right; (10) unremarkable balance; and (11) negative straight leg raise. (R. 794-95). Dr. Hakim's impressions were back pain, status post two surgeries, neck and shoulder pain, and chronic COPD. Dr. Hakim noted Plaintiff was still in pain and attended physical therapy. (R. 795).

Dr. Hakim completed a Medical Source Statement ("MSS") regarding Plaintiff's ability to perform work-related physical activities. The MSS opined

Plaintiff could: (1) occasionally lift and/or carry up to twenty pounds; (2) frequently lift and/or carry up to ten pounds; (3) sit and walk for two hours and stand for one hour without interruption; (4) sit for four hours, stand for two hours, and walk for three hours during an eight-hour workday; (5) frequently reach, handle, finger, feel, push, and/or pull with the right hand and do so continuously with the left hand; (6) frequently use his left foot and occasionally use his right foot to operate foot controls; (7) occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl; (8) frequently balance; (9) never climb ladders or scaffolds; (10) occasionally drive and tolerate occasional exposure to moving machinery, humidity, wetness, and extreme cold; (11) tolerate frequent exposure to dust, odors, fumes, pulmonary irritants, extreme heat, and vibrations; and (12) never tolerate exposure to unprotected heights. (R. 788-92).

The ALJ summarized all of the foregoing evidence. (R. 17-23). The ALJ also accurately noted the plaintiff's report—completed March 6, 2014—that he: (1) has problems performing all postural activities and completing tasks; (2) can occasionally lift twenty-five pounds; (3) can sit and/or stand for thirty minutes; (4) can walk a quarter-mile before needing to rest for ten to fifteen minutes; (5) can attend to personal needs independently but has difficulty bending to put on pants, socks, and shoes; (6) can prepare meals; (7) cannot perform household chores; (8)

drives, shops for food and clothing, handles finances, spends time with friends and family, attends church, and attends sporting events. (R. 220-25).

The ALJ also accurately summarized Plaintiff's testimony from the May 13, 2015 hearing regarding his injury, symptoms, failure of conservative treatment, surgeries, job history, and daily activities, namely: (1) he does very little and is bored all day; (2) his wife performed all household chores and assisted him in putting on socks and shoes; (3) he attends some—but not all—of his sons' sporting events because sitting, standing, and walking cause pain; (4) he lies down three hours a day due to pain; (5) his medication causes nausea, which he treats with Pepto-Bismol and; (6) he treats his pain with ice and/or heat approximately three times a week. (R. 18-19).

The ALJ also accurately summarized Plaintiff's testimony from a supplemental hearing held on November 6, 2015, including that: (1) he renewed his Commercial Driver's License ("CDL") after the first surgery but surrendered the license following the first hearing; (2) he is unable to perform any work or lift anything; (3) due to pain, he can only sit for thirty to forty minutes and stand for thirty minutes; and (4) even with medication, his pain is constant at four on a ten-point scale. (R. 19).

After recounting all of the foregoing evidence, the ALJ found Plaintiff suffered from pain but not pain so extreme as to prevent performance of activities

described in the RFC for restricted moderate work. (R. 23). The ALJ found this conclusion was supported by the medical record and Plaintiff's daily activities. (*Id.*). As to the medical record, the ALJ cited the plaintiff's consistent history of receiving only regularly-scheduled, quarterly medical treatment, without interim visits or emergency treatment. (*Id.*). The ALJ noted Plaintiff's examinations and treatments revealed only "mild objective findings" and the "minimal findings of his orthopedic." (*Id.*). The ALJ also noted Plaintiff did not see Dr. Dupré for three months following his surgeries and that Dr. Dupré's post-surgery examinations revealed normal findings. (*Id.*). The ALJ also relied on Dr. Gullung's November 9, 2015 treatment note showing no motion or loosening in the lumbar spine and normal station, gait, strength, and tone. (*Id.*). Finally, the ALJ noted: (1) the medical record did not show "prolonged chronic pain management treatment" for back pain; and (2) Plaintiff renewed his CDL between the two surgeries. (R. 23).

As to opinion evidence, the ALJ afforded some, but not great weight to Dr. Hakim's opinion. In doing so, the ALJ found Dr. Hakim's opinion imposed greater limitations than were supported by objective findings. In particular, the ALJ noted the exam indicated mild difficulties with heel and toe walking on the right with a slight antalgic gait. However, the ALJ pointed to the examination findings of negative straight leg raise bilaterally, normal tone, and adequate strength. (R. 23-24). As to Dr. Dupré's opinion, the ALJ afforded it little weight. (R. 24). In doing

so, the ALJ found his opinion to be internally inconsistent and inconsistent with his own treatment notes, as well as with the record as a whole. As to inconsistency, the ALJ noted Plaintiff's May 5, 2015 visit, during which Plaintiff denied musculoskeletal or neurological symptoms and Dr. Dupré found no physical abnormalities. (R. 24). The ALJ noted this normal exam occurred shortly after Dr. Dupré completed the PCE and Pain Questionnaire, which imposed marked restrictions on Plaintiff's physical abilities. (*Id.*).

Based on all of the foregoing evidence, the ALJ concluded that, while Plaintiff suffered from pain and physical limitations, his allegations concerning the extent of his pain and physical impairments were not fully credible. (R. 24). Having summarized the relevant medical evidence and the ALJ's decision, the undersigned turns to the issues Plaintiff presents on appeal, which are addressed in turn.

### A.    Pain Standard[3]

Where a plaintiff claims disability based on subjective complaints of pain, the Eleventh Circuit has provided the following standard:

_____

[3] Plaintiff contends certain comments the ALJ made during the hearings reveal his bias against finding disability because he was less than fifty years old. A claimant must present a claim of bias at the earliest opportunity. *Miles*, 84 F.3d at 1400 (citing 20 C.F.R. § 404.940). The Eleventh Circuit has held claims of ALJ bias can be presented to the appeals council. *Id.*; *see Cooper v. Barnhart*, 345 F. Supp. 2d 1309, 1310 (S.D. Ala. 2004). Here, Plaintiff did not present any claim of bias to the appeals council. (R. 7). Accordingly, it appears Plaintiff has waived any claim of bias in this court. *Bailey v. Astrue*, No. 14-0282-LSC, 2015 WL 661375 at *6 (N.D. Ala. *entered* Feb. 2, 2015).

When a claimant attempts to establish a disability through [his] own testimony concerning pain or other subjective symptoms, we apply a three-part test, which requires (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence that confirms the severity of the alleged pain stemming from that condition, or (b) that the objectively determined medical condition is of a severity that can reasonably be expected to cause the alleged pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam). "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam). The ALJ must explicitly and adequately articulate his reasons if he discredits subjective testimony. *Id.*

If the record shows that the claimant has a medically determinable impairment that could reasonably be expected to produce [his] symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ must consider all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and [his] doctors. *Id.* § 404.1529(c)(1)-(2). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve [his] pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to [his] pain or symptoms. *Id.* § 404.1529(c)(3). The ALJ must then examine the claimant's statements regarding [his] symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record. *Id.* § 404.1529(c)(4).

*Costigan v. Comm'r, Soc. Sec. Admin.*, 603 F. App'x 783, 786-87 (11th Cir. 2015).

Here, the ALJ discounted Plaintiff's allegations of debilitating pain as inconsistent with the medical record and Plaintiff's self-reported activities. As to

the medical record, the ALJ found Plaintiff was typically treated by his primary physician on a regular, quarterly schedule and did not seek additional visits. (R. 23). The ALJ also found the record did not reflect "recurrent emergency room visits, recurrent inpatient hospitalizations, or prolonged chronic pain management treatment." (*Id*.). While the ALJ's description of the treatment Plaintiff sought is accurate, it does not support the ALJ's determination that Plaintiff's complaints of debilitating claim were not credible.

Under the applicable Social Security Ruling,[4] "a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements." SSR 96–7p, 1996 WL 374186 at *7. A longitudinal history of complaints of pain and attempts to relieve support a claimant's allegations of debilitating pain. *See Carr v. McMahon*, 481 F. Supp. 2d 1227, 1231-32 (N.D. Ala. 2007); *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 64 (11th Cir. 2010) ("complaints of disabling pain are bolstered by evidence that [claimant] made numerous visits to her doctors over the course of several years, underwent numerous diagnostic tests, and was prescribed

---

[4] Both parties correctly note SSR 96-7p was in effect at the time of the ALJ's February 26, 2016 decision. (*See* Doc. 12 at 5-6; Doc. 13 at 5). While SSR 16-3p, 2016 WL 1119029, later rescinded SSR 96-7p, it is not retroactive; the court applies the rules and regulations in effect at the time of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018) (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)).

numerous medications"); *Frizzell v. Astrue*, 487 F. Supp. 2d 1301, 1306 (N.D. Ala. 2007) (consistent history of pain complaints, coupled with treating physician's implicit acceptance of the complaints by prescribing pain medication, bolstered testimony of debilitating pain).

Here, immediately following the August 5, 2013 accident, Plaintiff reported extreme lower back pain; his injury was objectively confirmed by imaging. Plaintiff's treating physicians and specialists believed his complaints of pain, initially prescribing conservative treatments, then epidural injections, followed by a microdiscectomy. While the surgery temporarily alleviated his pain, it returned approximately four months later, confirmed by objective findings. Again, Plaintiff's treating physicians and specialists believed his complaints of pain, initially prescribing conservative treatments, then epidural and transforaminal injections, followed by a second back surgery: an anterior interbody fusion at L5-S1 and posterior decompression at L4-5.

While the second surgery improved Plaintiff's leg pain, his back pain continued as documented—and accepted—by Dr. Gullung. (*See* R. 526 (February 20, 2015 treatment note documenting moderate lumbar back pain); R. 905-06 (June 2, 2015 treatment note documenting complaints of lower back pain and stating Plaintiff was likely to have chronic pain); R. 907 (September 28, 2015 treatment note documenting complaints of mild to moderate lower back pain); R. 910

(November 9, 2015 treatment note documenting complaints of moderate back pain and noting Plaintiff "will always have some degree of pain and difficulty with ADLs, also due to the fact that he has not had full recovery by this time, he may not achieve full recovery ever.")). Accordingly, the record shows: (1) Plaintiff consistently complained of back pain for years; (2) Plaintiff's physicians believed his complaints of pain; (3) Plaintiff underwent repeated diagnostic tests revealing objective evidence of injury; (4) Plaintiff was prescribed and followed progressively aggressive treatment regimens, including two back surgeries; (5) Plaintiff continued to complain of back pain; and (6) his treating physicians continued to accept his complaints. That Plaintiff did not seek emergency treatment and was not repeatedly hospitalized does not discredit his complaints of pain in the face of his longitudinal medical history.

Next, in discrediting the severity of pain the Plaintiff claimed, the ALJ noted he did not see Dr. Dupré for the three months following either surgery. (R. 23). However, the medical record reflects Plaintiff was under the care of—and was reporting his pain to—his surgeons in the months following his surgeries. (R. 468, 471-94; R. 526, 905-910). Accordingly, the longitudinal medical record shows Plaintiff's consistent allegations regarding pain to his treating physicians.

The ALJ also relied on Plaintiff's reported activities of daily living to support the conclusion that his pain was not as severe as alleged. Plaintiff reported

he: (1) can attend to personal needs independently but has difficulty bending to put on pants, socks, and shoes; (2) can prepare meals; (3) cannot perform household chores; (4) can drive, occasionally shop for food and clothing, and handle finances; and (5) spends time with friends, attends church, and attends his children's sporting events. (R. 220-25).[5] At the hearings, Plaintiff testified: (1) on a typical day he does very little and is bored all day; (2) his wife performed all household chores and assisted him in putting on socks and shoes; (3) he attends some—but not all— of his sons' sporting events because sitting, standing, and walking cause pain; (4) he lies down three hours a day due to pain; (5) his medication causes nausea, which he treats with Pepto-Bismol; and (6) he treats his pain with ice and/or heat approximately three times a week. (R. 19).

Routine and limited activities of daily living do not disprove the existence of disabling pain. The Eleventh Circuit has held "participation in everyday activities of short duration, such as housework or fishing," does not disqualify a claimant from disability. *Lewis v. Callahan,* 125 F.3d 1436, 1441 (11th Cir. 1997). As courts sitting in this district have noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially

---

[5] Plaintiff reported he would visit with friends to "drink coffee and talk" every other day. (R. 224). Plaintiff reported he attended church and his children's sporting events two to three times per week. (R. 224).

functional on two days.  *Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity* .... It is well established that sporadic or transitory activity does not disprove disability.

*Frizzell*, 487 F. Supp. 2d at 1306 (quoting *Smith v. Califano,* 637 F.2d 968, 971-72 (3rd Cir. 1981).  Instead, "[i]t is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances. *Id.* Accordingly, the daily activities Plaintiff reported and testified to do not undermine his consistent complaints of debilitating pain.

Finally, to the extent the ALJ relied on Plaintiff's renewal of his CDL, the decision does not explain how this discredited his testimony of pain.  The ALJ notes Plaintiff renewed his CDL after his first surgery but surrendered it in May 2015, after his second surgery.  (R. 23).  The inferences the ALJ drew from these facts are unclear.  For the foregoing reasons, the ALJ's decision to discredit Plaintiff's testimony regarding the severity of his pain is not supported by substantial evidence.

B.    **Opinion Evidence**

The opinion of a treating physician is entitled to substantial or considerable weight absent a showing of good cause. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).  Failure to clearly articulate the reasons for affording less weight to a treating physician is reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Here, the ALJ gave little weight to the PCE and Pain Questionnaire Dr. Dupré completed. In reaching this decision, the ALJ stated Dr. Dupré's opinion was internally inconsistent and inconsistent with his treatment notes and the record as a whole. (R. 24). As an initial matter, the ALJ does not describe how Dr. Dupré's opinion was internally inconsistent; nor can the undersigned discern any internal inconsistencies. As to inconsistencies with Dr. Dupré's records, the ALJ cites exclusively to the treatment notes associated with Plaintiff's May 5, 2015 visit, which was contemporaneous with the opinion at issue. Specifically, the ALJ noted the May 5, 2015 treatment note indicated Plaintiff denied back problems and his physical exam was normal. (*Id.*). The note also documents the purpose of the visit was a check-up and to complete an insurance form. (R. 629). While the note does indicate normal physical examination findings and does not indicate Plaintiff complained of pain, it also documents plaintiff's prescription of Ultracet for pain and that Plaintiff "cannot sit or stand for more than 30 minutes at a time." (R. 631).[6]

Finally, to the extent the ALJ found Dr. Dupré's opinion was contradicted by the record as a whole, this conclusion is not supported by the record for the same

---

[6] This analysis also ignores contemporaneous records from Dr. Gullung, who was following Plaintiff after his second surgery, reflecting Plaintiff's complaints of back pain. (*E.g.* R. 526, 905).

reasons identified in Section III.A., *supra*.  For all of the foregoing reasons, the ALJ failed to show good cause to afford little weight to Dr. Dupré's opinion.

## IV.   CONCLUSION

Upon review of the administrative record and the briefs of the parties, the court finds the Commissioner's decision is not supported by substantial evidence and did not apply the correct legal standards.  Accordingly, the Commissioner's decision is due to be reversed and remanded for further consideration.  A separate order will be entered.

**DONE** this 28th day of September, 2018.

_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE